1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| TERRANCE T. POWELL, | |
|---|---|
| Petitioner, | Case No.  C07-5046RBL-KLS |
| v. | REPORT AND RECOMMENDATION |
| JOHN GAY, | Noted for April 25, 2008 |
| Respondent. | |

Petitioner is a state prisoner currently incarcerated at the Pierce County Jail, located in Tacoma, Washington. This matter is before the Court on his petition for writ of *habeas corpus* filed with this Court pursuant to 28 U.S.C. § 2254. (Dkt. #5). Respondent has answered the petition (Dkt. #16) and filed the relevant state court records (Dkt. #17), and petitioner has filed a reply thereto (Dkt. #28). Thus, the case is ripe for review and a decision by the Court.

## FACTUAL AND PROCEDURAL HISTORY

Petitioner was found guilty in 2002 of murder in the first degree, with a "special verdict/finding for use of a firearm."[1] Notice of Respondent's Submission of Relevant State Court Records ("Record")

---

[1] As noted by the Washington State Court of Appeals, petitioner actually "was first tried and convicted in 1998 in a joint trial with his co-defendant and principal, Kimonti Carter." Record, Exhibit 29, p. 1. He appealed, and the Court of Appeals "reversed his conviction because the jury improperly considered legal definitions not provided by the trial court," although his co-

REPORT AND RECOMMENDATION
Page - 1

1  (Dkt. #17), Exhibit 1, p. 2.  The trial judge gave him an exceptional sentence, consisting of a total prison

2  term of 720 months for the murder conviction.[2]  Id. at p. 8.  Petitioner also was sentenced to a further 60

3  months in prison for the special firearm verdict/finding.  Id.

4      The Washington State Court of Appeals summarized the facts presented in petitioner's first trial,

5  which are set forth in relevant part below:

> About 1:00 a.m. on Saturday, May 24, 1997, Irshad Altheimer was driving four friends in his 1982 Chevrolet Caprice.  Mashana Gee was in the front passenger seat.  Corey Pittman, Neambi Thompson and Derek Berhard were in the back seat.  None was affiliated with a gang.
>
> While heading north on South Grant Street, Altheimer stopped at its intersection with South 15th Street.  Another car, a 1979 Oldsmobile, had already come to a stop directly across the intersection, facing south on South Grant Street.  The intersection is located in Tacoma's Hilltop area.
>
> Powell was driving the Oldsmobile.  His passengers were Carter, Abram Potts, Marcus Carter (Carter's younger brother), and James Cavil.  Carter was in the front passenger seat. Potts, Marcus and Cavil were in the back seat.  Powell, Carter, and Potts were members of the Pyru Bounty Hunters, a sect of the Bloods gang.  Cavil was a member of the East Side Pyru, another sect of the Bloods gang.  According to Cavil, a rival gang, the Hilltop Crips, dominates the Hilltop area.
>
> A few minutes before arriving at the intersection, Powell and his passengers had been at Aletha Robinson's residence, 1214 South Ridgewood Street.  When they left, Carter was carrying a loaded "Mak 90" rifle.
>
> While stopped at the intersection, Powell and his passengers noticed Altheimer and his passengers.  Believing that Altheimer's Caprice belonged to a member of the Crips, Cavil said, "There go them n******."[3]  Carter then told Powell, "Wait and let that car go first."  Powell waited for the Caprice to pass, then followed as it turned west on South 15th Street.  Carter told Powell to "[g]et up behind" the Caprice and speed up, which Powell did.  Then, as the Oldsmobile overtook the Caprice, Carter leaned out the front passenger window, raised the Mak 90 to his shoulder, and fired at least fifteen bullets.
>
> Carter fired for a significant period of time. According to Marcus, he fired "[f]or a while[,]" "[m]aybe a block[,]" with "like a little pause after everyone."  According to Potts, he fired for "at least a minute it seemed like." According to Cavil, he fired "[a] lot," and about "as fast as you could pull the trigger."  When Carter stopped firing, he remarked that "[t]he Mak 90 kind of gets off."
>
> Many bullets struck the Caprice.  Pittman was killed, Gee was hit in the left shoulder, and Altheimer was hit in the right buttock and right wrist.  Altheimer lost control of the Caprice, which crashed into a pole.
>
> Tacoma police officers recovered 15 spent 7.62 millimeter casings from the westbound lane of South 15th Street.  They also found bullet holes in Altheimer's car and in a nearby apartment building.  The pattern of bullet holes indicated that Carter

---

defendant's conviction was affirmed.  Id. at pp. 1-2.  Petitioner was re-tried alone in a second trial held in 2002, in which, as discussed above, he again was found guilty.  Id. at p. 2.

[2]The Washington State Court of Appeals subsequently vacated the exceptional sentence and remanded the matter back to the trial court for re-sentencing.  Id., Exhibit 29, p. 9.

[3]The Court of Appeals, referring to the trial transcript, related that "[i]n gang parlance, this was a reference to the rival gang, the Crips."  Id., Exhibit 2, p. 2.

REPORT AND RECOMMENDATION
Page - 2

>   had started to fire when the Oldsmobile was still behind the Caprice, then continued firing as the Oldsmobile passed the Caprice.

Id., Exhibit 2, pp. 2-3 (internal footnotes omitted).  The Court of Appeals further addressed the facts of this case with respect to petitioner's second trial in relevant part as follows:

>   Powell was previously convicted of this offense [first degree murder under means alleging that he caused a death under circumstances manifesting an extreme indifference to human life] and we reversed that conviction based on juror misconduct. We set forth the facts of the case in the unreported decision.  This appeal is from the second trial where Powell was convicted, but the facts remain the same. . . .
>   The only significant difference in evidence between the two trials is that Kimonti Carter, the shooter, and Powell, the driver, testified in the instant trial.  Carter testified that he fired the shots, did not plan to shoot anyone, did not tell Powell that he was going to shoot, and did not talk to Powell while he was shooting.  Powell testified that he did not know that Carter had a gun, he heard shots and thought he was being fired on; he was accelerating to get away; he did not know Carter was going to shoot; he did not know who Carter was shooting at; he did not think he was creating a grave risk to anyone by letting Carter in the car with the gun, and he did not solicit, command, request, or encourage Carter to commit murder.

Id., Exhibit 3, pp. 1-2 (internal citations omitted).

Petitioner appealed his conviction to the Washington State Court of Appeals, Division II, which on December 23, 2003, denied that appeal and affirmed the conviction. Id., Exhibit 3.  On February 24, 2004, the Court of Appeals denied petitioner's motion for reconsideration of its decision, though it did amend one of the decision's paragraphs found to have been unclear. Id., Exhibits 8-10.  Petitioner filed a petition for review with the Washington State Supreme Court, which denied it on November 3, 2004. Id., Exhibits 11-12.  The Court of Appeals issued its mandate on January 31, 2005. Id., Exhibits 17-18.

On March 2, 2005, petitioner filed a petition for review with the Washington State Supreme Court, which treated it as a motion for discretionary review. Id., Exhibits 19-20.  The Washington State Supreme Court Commissioner denied that motion on April 14, 2005. Id., Exhibit 21.  Petitioner's motion to modify the Commissioner's ruling was denied by the Supreme Court on July 13, 2005. Id., Exhibits 22-23.  As the mandate the Court of Appeals' issued on January 31, 2005 was never recalled, that mandate continued to remain in effect. Id., Exhibit 24.

On September 14, 2005, petitioner filed a personal restraint petition with the Washington State Supreme Court, which was transferred to the Washington State Court of Appeals. Id., Exhibits 25 and 28. On June 20, 2006, the Court of Appeals denied that part of the petition challenging petitioner's conviction, but granted the part challenging his exceptional sentence. Id., Exhibit 29.  The Washington

1  State Supreme Court Commissioner, on October 11, 2006, denied a motion for discretionary review
2  petitioner had filed regarding the Court of Appeals denial of his petition. Id., Exhibits 30-31.  Petitioner's
3  motion to modify the Commissioner's ruling was denied on January 3, 2007. Id., Exhibits 32-33.  The
4  Court of Appeals issued its certificate of finality on May 1, 2007. Id., Exhibit 34.

5  Petitioner filed his current petition for federal *habeas corpus* review with this Court on January
6  31, 2007 (Dkt. #1-#5), and there do not appear to be any issues with respect to timeliness here.  In his
7  petition, petitioner challenges the legality of his conviction.  Specifically, petitioner claims his
8  constitutional rights to effective assistance of counsel, due process of law, conviction by proof beyond a
9  reasonable doubt, and freedom from self-incrimination were violated due to the following:

   (1) Defense counsel "was constitutionally ineffective for opening the door to alleged evidence of" petitioner's "bad character on direct examination of" Mr. Carter, which allowed "the State to bring in 404(b) propensity evidence and/or testimony" from Alethea Robinson – who alleged she had witnessed petitioner "in a previous incident along with Mr. Carter shooting at a car that was involved in a drive-by shooting of" her house – to his prejudice;

   (2) Defense counsel's actions in "opening the door" prejudiced petitioner by forcing him "to choose between not testifying or taking the witness stand to answer the other acts uncharged offense" testified to by Ms. Robinson; and

   (3) Petitioner was prejudiced by defense counsel's "actions and/or omissions" in failing "to request a limiting instruction under ER 105 that would have been granted from the trial court for the otherwise inadmissible evidence counsel's negligence allowed in."

18  Petition, at pp. 3-4.

19  There do not appear to be any issues in this case with respect to exhaustion of the above claims,
20  and none have been raised by respondent.  Therefore, after carefully reviewing the petition, respondent's
21  answer, petitioner's reply thereto, and the remaining record, the undersigned recommends that the Court
22  deny the petition for the reasons set forth below.

## NO EVIDENTIARY HEARING IS REQUIRED

24  In a proceeding instituted by the filing of a federal *habeas corpus* petition by a person in custody
25  pursuant to a judgment of a state court, the "determination of a factual issue" made by that court "shall be
26  presumed to be correct." 28 U.S.C. § 2254(e)(1).  Under 28 U.S.C. § 2254(e)(1), the petitioner has "the
27  burden of rebutting the presumption of correctness by clear and convincing evidence." Id.

28  Where a petitioner "has diligently sought to develop the factual basis of a claim for habeas relief,

but has been denied the opportunity to do so by the state court," an evidentiary hearing in federal court will not be precluded. Baja v. Ducharme, 187 F.3d 1075, 1078-79 (9th Cir. 1999) (quoting Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir. 1998)). On the other hand, if the petitioner fails to develop "the factual basis of a claim" in the state court proceedings, an evidentiary hearing on that claim shall not be held, unless the petitioner shows:

>(A) the claim relies on--
>
>>(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>>(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
>(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense

28 U.S.C. § 2254(e)(2).

An evidentiary hearing "is required when the petitioner's allegations, if proven, would establish the right to relief." Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998). It "is *not* required on issues that can be resolved by reference to the state court record." Id. (emphasis in original). As the Ninth Circuit has stated, "[i]t is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." Id.; United States v. Birtle, 792 F.2d 846, 849 (9th Cir. 1986) (evidentiary hearing not required if motion, files and records of case conclusively show petitioner is entitled to no relief) (quoting 28 U.S.C. § 2255).

Here, "[t]here is no indication from the arguments presented" by petitioner "that an evidentiary hearing would in any way shed new light on the" grounds for federal *habeas corpus* relief raised in his petition. Totten, 137 F.2d at 1177. Because, as discussed below, the issues raised by petitioner may be resolved based solely on the state court record and he has failed to prove his allegation of constitutional errors, no evidentiary hearing is required.

## DISCUSSION

I.      Standard of Review

A federal petition for writ of *habeas corpus* filed on behalf of a person in custody pursuant to a judgment of a state court:

> [S]hall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Thus, 28 U.S.C. § 2254(d) "defines two categories of cases" where such relief may be obtained. Williams v. Taylor, 529 U.S. 362, 404 (2000).

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases. Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams, 529 U.S. at 405-06). A state court decision also is contrary to the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result different from" that precedent. Id.

A state court decision can involve an "unreasonable application" of the Supreme Court's clearly established precedent in the following two ways: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407. However, "[t]he 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." Lockyer, 538 U.S. at 75. That is, "[t]he state court's application of clearly established law must be objectively unreasonable." Id.

Under 28 U.S.C. § 2254(d)(2), a federal petition for writ of *habeas corpus* also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Juan H. V. Allen, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). As noted above, however, "[a] determination of a factual issue made by a State court is presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

1  II.     Scope of Review and Harmless Error

2  The district court may not "reexamine state-court determinations on state-law questions." Estelle
3  v. McGuire, 502 U.S. 62, 67-68 (1991). Thus, the court "is limited to deciding whether a conviction
4  violated the Constitution, laws, or treaties of the United States." Id. at 68; see also Smith v. Phillips, 455
5  U.S. 209, 221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and
6  may intervene only to correct wrongs of constitutional dimension."). In addition, for federal *habeas*
7  *corpus* relief to be granted, the constitutional error must have had a "substantial and injurious effect or
8  influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (citation
9  omitted). In other words, a petitioner is "not entitled to habeas relief based on trial error," unless he or
10 she "can establish that it resulted in 'actual prejudice.'" Id.

11 III.    Petitioner Has Failed to Establish Ineffective Assistance of Counsel

12 The Sixth Amendment to the United States Constitution guarantees criminal defendants the right
13 to effective assistance of counsel. Yarborough v. Gentry, 540 U.S. 1, 4 (2003); Strickland v. Washington,
14 466 U.S. 668, 686 (1984) (right to counsel is right to effective assistance of counsel). When ineffective
15 assistance of counsel is claimed, the standard to be used is "whether counsel's conduct so undermined the
16 proper functioning of the adversarial process that the trial cannot be relied on as having produced a just
17 result." Strickland, 466 U.S. at 686.

18 Counsel's representation must have been "so defective as to require reversal of a conviction." Id.
19 at 687; see also Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) ("Only those petitioners who can
20 prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys
21 will be granted the writ."). To prevail on such a claim, the defendant must show that "counsel's
22 performance was deficient," and that "the deficient performance prejudiced the defense." Strickland, 466
23 U.A. at 687. Thus, unless both of these showings are made, "it cannot be said that the conviction . . .
24 resulted from a breakdown in the adversary process that renders the result unreliable." Id.

25 There also is a "strong presumption" that the performance of counsel "falls within the 'wide range
26 of professional assistance.'" Kimmelman, 477 U.S. at 381. With respect to attorney performance, the
27 proper standard to be used "is that of reasonably effective assistance" under "prevailing professional
28 norms." Strickland, 466 U.S. at 687-88. Therefore, "the defendant must show that counsel's

REPORT AND RECOMMENDATION
Page - 7

representation fell below an objective standard of reasonableness." Id. at 688; United States v. Vincent, 758 F.2d 379, 381 (9th Cir. 1985) (defendant must show counsel's errors reflect failure to exercise skill, judgment or diligence of reasonably competent attorney).

Counsel, furthermore, has "wide latitude in deciding how best to represent a client" and "making tactical decisions." Yarborough, 540 U.S. at 5; Strickland, 466 U.S. at 689. The competence of counsel "is presumed," and thus "[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." Kimmelman, 477 U.S. at 381, 384. Not surprisingly, therefore, "the standard of review is highly deferential." Id. at 381. As the Supreme Court has explained:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Strickland, 466 U.S. at 689 (citations omitted).

As noted above, to prevail on an ineffective assistance of counsel claim, the defendant also must "affirmatively prove prejudice." Id. at 693. In other words, it is not enough to show that "particular errors of counsel were unreasonable," and that they had "some conceivable effect on the outcome" of the trial. Id. Rather, it must be shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is that which is "sufficient to undermine confidence in the outcome." Id. When determining whether prejudice exists, the court "'must consider the totality of the evidence before the judge or jury.'" Kimmelman, 477 U.S. at 381 (citing Strickland, 466 U.S. at 695).

With respect to the deficient performance prong of the Strickland determination, there appears to be no dispute as to whether this prong was met regarding defense counsel's questioning of Mr. Carter on direct examination, which opened the door to Ms. Robinson's testimony. Indeed, in addressing that issue, the Washington State Court of Appeals stated in relevant part:

> Petitioner argues that his lawyer's broad questions to Carter that allowed the

REPORT AND RECOMMENDATION
Page - 8

> State to rebut Carter's blanket assertions with otherwise inadmissible testimony detailing Petitioner's prior involvement in gang shootings[4] constitutes prejudicial deficient performance; . . . In an effort to establish the deficient performance prong, Petitioner attaches his own affidavit reciting that his lawyer admitted to him that he "messed up" by asking the questions. The State argues that petitioner can't meet his burden without an affidavit from the lawyer himself. This court need not decide this issue. Assuming without deciding that his lawyer's questioning of Carter constituted deficient performance, Petitioner fails to demonstrate prejudice.

Record, Exhibit 29, pp. 5-6. As such, it appears the Court of Appeals proceeded on the assumption that the deficient performance prong had been met, and respondent does not argue otherwise. There appears to be no reason why the Court should not do the same for the purposes of federal judicial review here.

Respondent argues, however, and the undersigned agrees, that nevertheless petitioner has failed to show that such error on the part of defense counsel constituted "prejudice" as that term is employed by the Strickland court. Again, in regard to the issue of prejudice, the Washington State Court of Appeals found petitioner had failed to make the required showing:

> This court recognizes that admission of the rebuttal testimony benefited the State's theory and harmed the Petitioner's. Prior to the crime, Petitioner had moved to

---

[4]As previously found by the Court of Appeals:

> According to the portions of the trial transcript provided by Petitioner, the State wished to introduce, at both trials, evidence that Petitioner had been involved with Carter in gang-related gunfights with the Crips. The State contended this would be admissible under ER 404(b) as evidence of motive and knowledge. In particular, the State wished to introduce testimony from Robinson about two incidents: (1) that she met Petitioner when he drove Carter and others to her house in a car that the Crips had just hit with gunfire and (2) that when Crips shot at her house, Carter fired back and Petitioner grabbed a gun intending to fire back. The second trial court allowed the State to present evidence only that the Petitioner was aware of these two incidents, but not his participation in them.
>
> During direct examination, Petitioner's lawyer obtained Carter's denial that he had talked to Petitioner during the shooting, and then questioned Carter as follows:
>
> Q: Had you ever been in a situation like this with Terrance before, Terrance Powell?
>
> A: Never.
>
> Q: Had you ever been in a shooting situation with him?
>
> A: No.
>
> Q: Had you ever been shot at with him?
>
> A. Huh-uh.
>
> The trial court then ruled that Petitioner's lawyer had "opened the door" to allow the State to present testimony detailing Petitioner's purported direct involvement in the two previous shooting incidents. The State did so, through Robinson.

Record, Exhibit 29, pp. 4-5; see also Record, Exhibit 35, Vol. XIV at 1668-1669, 1798-1807.
REPORT AND RECOMMENDATION
Page - 9

> Walla Walla to attend community college, returning to visit friends in Tacoma on some weekends. The State was trying to prove that Petitioner nevertheless was involved in gang activities so that (1) he would know that Carter was shooting at the other car and (2) he would have a motive to help Carter shoot at the car believed to contain rival gang members. But that the rebuttal evidence harmed Petitioner does not necessarily satisfy the prejudice prong for an ineffective assistance claim. All relevant evidence is prejudicial in the sense of harming one party or another.
>
> To demonstrate prejudice, Petitioner "must show that there is a reasonable probability that, but for" the unlimited admission of the rebuttal testimony, the jury would not have convicted him. But as recited above, the direct evidence of Petitioner's complicity was strong and compelling.
>
> The State presented other evidence that Petitioner and Carter were both members of a Bloods gang engaged in conflict with the Crips gang. Petitioner knew that Carter had carried the loaded Mak 90 into the car. Petitioner was stopped at the intersection before the other car arrived. His passengers identified that car's occupants as Crips. Carter told him to wait for the other car to go first when the light changed. Petitioner complied; that is, he did not simply drive when the light changed but waited to see what the other car would do. Petitioner then followed the other car. Carter told him to accelerate to catch up to the other car, and Petitioner complied. Carter, seated next to Petitioner, then leaned out the window and began firing the Mak 90. He began firing *before* Petitioner caught up to the other car. Petitioner continued to catch up; he did not brake or turn. Petitioner brought his car alongside the other car while Carter continued to fire, again without braking or turning. Carter fired for a long time and fired many shots. Of course, the jury also heard Petitioner's denial that Petitioner knew what Carter was doing and about to do.
>
> Given this compelling evidence of Petitioner's coordination of his driving with Carter's deadly fusillade of bullets, there is no reasonable probability that the jury would have reached a different verdict if it had not heard the rebuttal testimony. Petitioner's testimony that he did not know Carter was firing the gun and that he was accelerating to get away was inconsistent not only with the testimony of others in the car but also with the physical evidence, as the shooting started before Petitioner drew abreast of the other car and continued thereafter. Had Petitioner been trying to get away from shots fired from the other car, he would not have pulled alongside it and stayed alongside it after the shooting started. Petitioner's testimony was not credible when contrasted with the evidence in the State's case in chief; he does not prove it reasonably probable that the jury would have accepted his version but rejected it after hearing Robinson's rebuttal testimony.[5]

Id. at pp. 6-8 (emphasis in original) (internal citation and footnotes omitted). The undersigned finds the above summary accurately reflects the trial record. As such, the undersigned further finds petitioner has failed to show that court's determination was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). Nor does its determination appear to be "contrary to," or to involve "an unreasonable application of, clearly established federal law." Id.

As to petitioner's remaining specific grounds for *habeas corpus* relief, the undersigned finds them to be without merit as well. With respect to petitioner's claim that defense counsel's opening of the door

---

[5]The Court of Appeals went on to comment that in fact "[t]he rebuttal testimony may actually have supported Petitioner's version of events, since it provided testimony that Crips had previously fired at Petitioner, potentially giving him a reason to fear such attacks." Id. at p. 8, n.4.

REPORT AND RECOMMENDATION
Page - 10

prejudiced him by forcing him "to choose between not testifying or taking the witness stand to answer the other acts uncharged offense" he states were testified to by Ms. Robinson, the Washington State Court of Appeals correctly found as follows:

> Petitioner also claims that admission of the rebuttal testimony about his prior bad acts prejudiced him by requiring him to chose between his right to remain silent at trial and the need to refute the rebuttal testimony. But petitioner fails to provide any support for the proposition that his decision to testify was predicated on the admission of the rebuttal testimony, as opposed to a desire to present his version of the charged shooting to the jury. And even if Petitioner did so, he also fails to demonstrate that his decision to testify somehow prejudiced him.

Record, Exhibit 29, p. 5, n.5. Further, as pointed out by respondent, the rebuttal testimony could not have influenced his decision as to whether or not to testify, because Ms. Robinson testified <u>after</u> he already had done so. <u>See id.</u>, Exhibit 35, Vol. XIV at 1744-1794 and 1800-1815.

Finally, as claimed by petitioner, it appears that defense counsel "did not seek, and the trial court did not give, a limiting instruction" with respect to the rebuttal testimony concerning petitioner's alleged involvement in the prior shooting incidents. <u>Id.</u>, Exhibit 29, p. 5. However, the undersigned rejects the claim that defense counsel's failure to request any such instruction constituted ineffective assistance of counsel. As discussed above, the Washington State Court of Appeals did not err in finding that defense counsel's opening of the door on direct questioning of Mr. Carter amounted to prejudice as that term is used in <u>Strickland</u>. Because no such prejudice resulted, a failure to ask for and/or obtain[6] an instruction limiting the rebuttal testimony similarly did not prejudice petitioner.

## CONCLUSION

For the reasons set forth above, petitioner has failed to show that he is entitled to federal *habeas corpus* relief. Accordingly, the Court should deny petitioner's petition.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. <u>See also</u> Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set this matter for consideration on **April 25,**

---

[6] Although he asserts the trial court would have granted a limiting instruction had one been requested, petitioner has failed to establish this to be the case, even if the existence of prejudice could have been proven.

REPORT AND RECOMMENDATION

Page - 11

1  **2008**, as noted in the caption.

2      DATED this 31st day of March, 2008.

                                                 /s/ Karen L. Strombom
                                                 Karen L. Strombom
                                                 United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 12